v. Whirlpool Corporation, LLC, LLC, LLC, LLC, LLC, LLC, LLC, LLC, LLC, LLC, LLC, LLC, LLC, LLC, LLC, LLC, Land New York, LLC, Court of Appeals for the Federalist Circuit is now open and in session. God save the United States and this honorable court. Good morning. Please be seated. First case for argument this morning is 161511 Homeland Housewares versus Whirlpool. Mr. Trojan. Good morning, Your Honors. If it pleases the court, my name is Joseph Trojan. I'm counsel for appellate Homeland Housewares, the maker of the magic bullet and neutral bullet. In this case, it's important to look at an overview of this patent. The 688 patent claims a blender that speeds up and then slows down and then speeds up and then slows down. That you can look at the claim and you can attach fancy patents to it. You can attach patent words to each of those steps, but that's all that's essentially claimed. And so in this particular case, I think that the board lost track of the forest for the trees because something as simple as that is obvious in view of the prior art. First, we know that simply speeding up and slowing down a blender was manually done before there were microprocessors. By 2007 microprocessors had already been applied to blenders and there's already prior art references that teach the speeding up and slowing down of blenders. It's obvious to want to speed a blender up and slow it down because naturally the ingredients move away from the blade and you slow it down so that the ingredients can settle around the blade. I mean one of the things that may have happened here is that the other side had an expert and you didn't, right? Correct. And the board placed a lot of reliance on the expert who seemed to speak in coherent detail about what was going on here in the prior art references. Correct. Isn't there a basis that the board here had given the expert testimony on the other side to reach the conclusion? As the Supreme Court said in KSR, some you do not suspend common sense when you're doing these claims. Constructions and when you're determining whether an invention is contained in the prior art. The, for example, their expert goes and says that, well, a someone skilled in the art would be concerned about repeating the process because, for example, in the Kohler reference, it the first two steps after the first two steps, then it repeats a separate process. But in the Kohler reference, the, the expert goes and says, well, one would be an expert would in this field would be concerned that you might over blend. The fact that you know that if you turn it on and off too often, you may over blend doesn't mean that one skilled in the art doesn't know to turn it on and off in order to let the materials settle back around the blade. So that in itself, merely making that particular observation is one of common sense. And the fact that it came out of the mouth of an expert doesn't suddenly elevate that statement to say this patent. And in fact, in the Wolf reference, there's absolutely no need at all to even get into this whole issue of whether it's obvious to repeat the steps. But let's, let's stop right at that. Well, let me just ask you, and you can cover this maybe in what you're about to say, but the board, it seems to me kind of dismissed Wolf because Wolf says low speed. And they thought that even though they refused to define what settling speed was, they said, it's not the same thing as low speed. Is that your understanding of what the board was thinking? Okay. So why don't you cover why they were wrong? Correct. Well, Wolf describes low speed as a speed in which the ingredients settle back down towards the blade. Really? Where is that in the context of a manual operation, right? It's described in the context of a manual operation, but that's because Wolf is automating the manual operation. If you had a blender in the seventies, you would turn the switch back and forth on and off in order to make it blend better. Kohler is something that simply is automating that process, the microprocessor that's giving a very simple instruction. Simply turn it on to high speed, turn it down to low speed. The fact that Whirlpool has gone and renamed high speed and low speed as, as operating speed and settling speed doesn't make it patentable because we need to look at what the invention is. The invention is simply turning on and off the blender and it's nothing more than that. And the fact that they make an observation that, well, depending upon the ingredients that you're putting in here, you might want to have different, the settling speed is a different speed, but that's, that's also a whole problem that was never addressed, which was at the very heart. The board had an obligation to decide this issue of settling speed because it's key. They, they have truly a metaphysical definition of settling speed. This is not a method claim. This is an apparatus claim. And under, under their scenario, I could, depending upon what I put in the blender, I, the device could infringe or it could not infringe because they're saying that that speed is, their settling speed is dependent upon what I put in there. And it's metaphysical because there's no... It's also dependent on other factors too, right? Oh, the thickness of the ingredients, the power of the motor, all of these, all these factors. And we're told that we're supposed to go and experiment. I have a fundamental problem with the idea that I'm supposed to empirically determine whether I infringe any element of any claim. Well, it could hardly get a patent on the idea that you should experiment to figure something out, right? That's correct. They did not get a patent on that. And yet now in defense of the patent, they're saying that that the settling speed is empirically determined. And, and so that means that they're saying, will you go and invent and figure out the optimal settling speed? And remember, settling is a, is an entire process. It's a continuum until everything settles to the bottom. They don't mean settled speed when every, all the, all the suspended particles have settled about the blade. They're talking about a settling speed. Well, when what, 10% has been settled towards the blade, 20%, 50%. We're not told any of this. We don't know what this, what this empirical calculation, when we've reached the answer to the empirical calculation. Where this is, this is, is, is, is asking that the user go and do the inventing. And it varies depending upon what you put in the, in the, whether you infringe or not, it varies depending upon what you put in the blender. That cannot possibly be a correct interpretation of patent law. If anything is definitive, it should be the claim. Where the claim is the meets and bounds. We all know that. And so therefore we've proposed a definition that's very simple, very direct, very understandable. You know whether you're infringing or not. The definition of settling speed is simply in relationship to the operating speed. It's a lower speed. You turn it on to get to the operating speed. You, the program turns it off to go down to a settling speed and then turns it back on. So settling speed actually is anything below the operating speed. And that makes common sense because settling occurs as soon as you turned off the motor. So there's a set, anything below the operating speed is, is a speed at which things are settling. So that's a settling speed. So the second one is anything below that. Once you define it that way, Wolf contains all the limitations. It has a, it has a high speed, it has a low speed, it has a high speed again and a low speed. They're different in the, when it repeats the cycle, it decides to, it describes it in figure 25 of Wolf. It describes those speeds as being for different lengths of time. But that doesn't matter because there's no limitation in the claim about how long these speeds are supposed to run. And so therefore Wolf is a full anticipation. And for that reason, if the board had simply adopted and it decides to up the issue, if it had adopted a proper interpretation, a definitive interpretation of settling speed, it would have come to the conclusion that Wolf anticipated these claims. With respect to, with respect to the Kohler reference, again, it should be applying common sense. We say Kohler is not, not anticipation, but obviousness. It has the first two steps. It has a program that has an operating speed and it has a lower settling speed. To suggest that someone skilled in the art would have gotten to that point, looked at the, looked at the device and go, oh, it didn't do what I want. What should I do next? Repeat the cycle. It's, it's, it's just common sense. No one disputes that that kind of common sense existed before there was ever a microprocessor to put it in a blender. People just did it automatically because it was the common sense thing to do. Turning off and on blenders to get the ingredients back towards the, towards the blade. So whichever reference you use, whether it's anticipated or obvious, when you look at the forest for this patent, rather than focusing on the individual trees, this is not a patent that should have been issued. Maybe it should, could have been issued initially to Kohler in the very beginning, but it's certainly not a patent in this day and age for turning on and off of a blender by, by simply by a program that is deserving of a patent and it's fully anticipated. And I will preserve the balance of my time. Good morning. Richard Hunt, Morrison Forrester for Whirlpool. May it please the court. So there's no question but that the steps of this patent were known in the prior art to do this manually, right? I would agree that the independent steps of cycling the motor on and off manually were known, Your Honor. Okay. So, and Wolf disclosed automating what was done manually in the prior art, right? It disclosed automating certain of the steps. It didn't disclose the idea of dropping it to a low speed and then bouncing it back. But it, but it generally talks about automating the, what was in the prior art and it describes the, the prior art steps here exactly the way the patent does. And it says automate them, right? I would disagree with that. Do you disagree with that? I disagree with that. Why do you disagree with that? It does discuss in the background section. So the only argument with respect to Wolf is 102. It's only a 102 argument. So they have to demonstrate that in a single embodiment under the net money case. Yeah, but I try to address my specific question. It, it, it, you've agreed that it describes doing this manually. And my question was, it tells you to automate the things that previously were done manually, right? It describes steps of the claim. No, forget about steps. Just, just the general question. It talks about, tells you to automate things that were done manually in the previous art, right? It does refer to automation, correct, as part of the program. So the question is whether your patent does anything more than generally describe automating what was done manually before. Correct. Okay. So how does it do that? The reason that does this, Your Honor, with respect to Wolf, focusing first on Wolf, the only issue with Wolf is whether figure 25 discloses all of the limitations. It's the only thing they're focusing on for Wolf. Okay. So what's your definition of settling speed? If, if settling speed is low speed, is, is a reduced speed, then Wolf discloses it, right? It is not merely a reduced speed. No, but no, no, no, no. What's the answer to my question? If, if settling speed means a speed that is lower than the operating speed, then Wolf discloses that, right? Any speed lower, that would be correct. Yes, it would disclose it. That is correct, sir. Okay. So why is settling speed something other than a lower speed? It's something other than a lower speed because the claim refers to a predetermined settling speed for claim one that is indicative of the contents having settled around the cutter assembly, also must be greater than zero, also must be lower than the operating speed. So a construction that only focuses... But lower than the operating speed is a slower speed. Lower than the operating speed. So there's three parts of the plain language definition, just, just what's in the claim. The claim refers to greater than zero. It refers to lower than the operating speed. And then it also refers to that must be predetermined settling and must be in claim one indicative of the items in the container having settled around the cutter assembly. So it's not simply any speed lower. Yeah, but it doesn't, it doesn't tell you how to predetermine this. It tells you that, that explicitly in the specification that could vary by type of machine, by type of food, by a whole range of things. It doesn't tell you how to make the determination of what a settling speed is. And under those circumstances, how can we construe it as being anything other than a lower speed? Because to construe it as being only a lower speed would read out that entire limitation of indicative of the contents of the container having settled around the cutter assembly. What does that mean? Indicative of the items in the container having settled around the cutter assembly. I mean, if you look at the specification at column four, what it tells us is the predetermined everything are functions of the blender motor size, the cutter assembly configuration, the container size and configuration, the properties such as hardness and the viscosity of the items to be processed in the blender and the like, whatever that is, those are, and are selected to optimize effectiveness in the pulsing process. How is that any clarity? I mean, your friend pointed out, how on earth are you going to know whether you're infringing or not? What is the difference between your instances where the speed is lower and you're saying settling speed is something different than that? Well, describe to me what the difference is and how one is going to know that beforehand. I'm happy to address that. So if you look at the pattern, it is discussing, for example, in this context, an ice crushing function. Right. But you say it's not limited to ice crushing. It's not limited to that. Okay. But what you're going to do is for the predetermined settling speed, putting aside what the construction of it is, what one of skills in the art would do, and this is what Mr. Farber discusses, you would, if you knew that it was ice, you knew the would form tests to determine based on at what point in time it settles to arrive at the predetermined settling speed. So that sounds as though you're saying that you can get a patent that tells people to experiment and figure it out. So respectfully, if you look at the... You can't get a patent on that, right? You can't get a patent on telling people to do some research that'll answer a question. If it is known to one of skill in the art as to how to... Do you agree with what I said or not? I actually, I agree that you cannot get a patent that is not enabled or doesn't describe the invention. I don't think that's the case with this patent. But in other words, you cannot get a patent on an instruction to figure something out. That would be correct. That would be correct. But Your Honor, respectfully, I don't think that's what we have here. The reason why we don't have here is you have the board, you also have Mr. Farber, both of whom read this patent, understood what it was seeking with respect to predetermined settling speed. They were able to figure it out. The board refused to give us a definition of settling speed. How do we... You say they figured it out and that may be right, but we can't review they figured it out. So it's okay. We need to know what they figured it out to be and they wouldn't construe it. So what are we supposed to evaluate other than they figured it out? So now bringing it back full circle to the evidence, I would disagree that they didn't actually figure it out because there is an admission that Homeland Housewares makes with respect to the construction. And they say in their brief, they recognize that implicitly via its opinion, its final written decision and its institution decision, it was clearly rejecting the construction that Homeland was offering. Clearly rejecting it. In fact, this is an admission, I think, at page 64 of their brief, where they say that implicitly the board rejected Homeland's construction at arriving at its decision. So we know that there was some construction here. They rejected the construction at any speed less than the operating speed was the construction. So that means what? So what do we take away from that? We know what it isn't at any speed. Are we suggest, so what are we left with when they've rejected that? At some speed below, but not at every speed, but we don't know at what speed. What are we to make of that? So I'm happy to address that. And by the way, the admission happens at page 42 of the opening brief. They admit that the board implicitly adopted one that rejected their construction. Okay. The only other two constructions then pending was its own construction. And that was the construction of a speed at which the cutters. Its own, I'm sorry, who do you mean by its own? I'm sorry, the board. The board. Okay. The board's construction of a speed at which the cutter assembly has slowed enough to allow the blender contents to be processed again. Or in the alternative, Whirlpool's construction, a speed greater than zero that indicates that the items have settled around the cutter assembly. As between either of those constructions, based on substantial evidence, it determined that it didn't need to figure which one of those two was out. And the reason why is it mentions this eight times in its opinion. It's a 14 page detailed decision. It says four times that the arguments that Homeland is offering were unsupported. Four separate times that the evidence that Mr. Farber offered were unrebutted. But maybe if they made a mistake in the claim construction by rejecting Homeland's construction, you would lose, right? If Homeland's construction is correct, you lose. That's correct. If Homeland's construction is correct, Wolf would anticipate with respect to figure 25. Okay. So there's nobody relied on any extrinsic evidence here in urging the different constructions. It's all a matter of the intrinsic evidence. Why shouldn't we construe settling speed the way Homeland did? So why isn't that the right construction? The reason why it's the wrong construction is it would read out the phrase predetermined indicative of the contents in the container settling around the cutter assembly. Meaning you can literally excise that entire language from both claim and claim nine. And that would yield... Do you want us to construe the term so it's indefinite? No, Your Honor. I'm not encouraging you at all to construe the term. How do you know you're infringing? How does one know whether they're infringing? If for claim one, if one sells a blender that performs the cycle of operation, it infringes. And for claim nine, which is a method claim... What cycle is that? I mean, there's nothing. I mean, the spec tells us it's something that you figure out somewhere down the road, right? Depending on the size and the kind of what you're using and the like. We don't even know what these factors are that you're supposed to consider because they say the hardness of the items to be processed. So you figure out beforehand. So if you're using it for one item, it does infringe. And for another item, it doesn't infringe? No, Your Honor. It is a cycle of operation and the operating speed, both the operating speed and the settling speed are both predetermined. So for claim one... So if you just use it for powder, does it infringe? It never goes to whatever a settling speed is, right? If the blender were programmed any manner that it had the operating speed and were set for this predetermined settling speed, it would infringe claim one. Claim nine is a method claim, which actually requires that you reduce it to the predetermined settling speed. But it doesn't tell you how to determine the settling speed. The discussion of how to determine the settling speed is discussed in the patent. And it just says, you know, you reach the settling speed when the thing is slowed down. The fact that testing is required doesn't mean that the patent's indefinite. In the Nautilus case, it's exactly what the... What factors do you use? Really, listening to the trend of this argument, how deeply on the IPR is your perception that the board tries to decide what will infringe when they also decide the questions which are... To which they are limited in this proceeding? That's a good question, Judge Newman. I don't think that they're addressing the issue of infringement. They're also, because of their mandate, they're addressing issues relating to 102 and 103. They are addressing claim construction, but they're not addressing infringement issues as part of the... As part of their mandate, as part of the IPR proceeding. Because in looking at the presentation through experts, what is your perception as to how much reliance the board placed on the presentation that only one side offered an expert as compared with attorney argument? Because I always thought that the original plan of this procedure is that the administrative patent judges were experts and that the structure was that attorney argument did not require reinforcement by experts to go under and around and explain the record. How much reliance in your perception did the board place on this disparity? I think it's both. I think they did place reliance. It's undisputed that the final written decision refers to uncontroverted and unrebutted several times. At the same time, it also refers to the fact that Homeland, which bore the burden, didn't carry that burden. It says four separate times that they presented positions that were unsupported. Your Honor, if I may very briefly just jump to one alternative argument basis for affirming the decision. It wasn't the only basis for rejecting Kohler and Wolf. On Kohler, there's this issue of motivation to combine, and there's no response to the argument with respect to Kohler that you wouldn't want to repeat figure six because it would contradict the principle of operation. So in obviousness, motivation to combine is a question of fact. That's noted in their own Connecticut case. I think there's no dispute as to obviousness in Kohler that that should be affirmed. As to Wolf, resolving the issue of the claim construction isn't the only issue because the board also addressed the issue of pulsing, whether in the background section, the references they cited, whether the manual operation that Judge Dykert, you noted, disclosed pulsing. And the board held that that did not disclose pulsing. That's an independent basis for affirming. You both have the pulsing and you also have the claim construction. They would like this to be an appeal all about claim construction. But when you read the board's decision, it was also about a failure of proof. Repeatedly, they're saying this is a failure of proof. The only issue they're raising now on appeal with respect to figure 25 and pulsing is if you look carefully at their briefing, you'll see that they are raising a new argument in reply for the first time with respect to pulsing. You can look at their. I'm not understanding what you're saying because, you know, five minutes ago, you said that if you adopt their claim construction, you would lose. I would agree that if you adopt the claim construction, that we would lose with respect to it showing figure 25 disclosing limitations. I still think that's the let me rescind my my my concession. I apologize. I apologize, Judge Dykert. There was an independent basis, the first two paragraphs of the board's decision with respect to Wolf explains that it wasn't disclosing pulsing because the portions they cited to were not disclosing automation. The portions they cited to. How could it be not? How could it not disclose pulsing? Your Honor, it didn't disclose pulsing because what they were pointing to was a background discussion, the swanky prior art reference, which and also a discussion in the background section that talked about stopping. The background section discloses pulsing, doesn't it? Manual pulsing, correct. Yes. So the question is, when Wolf tells you to automate what was done manually before, whether that anticipates. So you have to disclose this pulsing in the sense that it discloses a manual process of pulsing. It discloses a manual process of pulsing, but the claim further requires that it be an automated process of pulsing that brings it to the operating speed. And what happens in the background discussion of Wolf is you are pulsing increasingly faster and faster and faster. So what was happening with respect to Wolf is Homeland was attempting to combine two and everything in the background section and the board correctly noted, you can't mix and match embodiments. It was a failure of proof. Then on reply for the first time, they try and adjust it purely to figure 25. That argument was waived. You're not seeing it in their petition. It appears for the first time only in the reply brief. So there's two separate bases with respect to Wolf. Thank you. Thank you. The first issue I'd like to bring up is the predetermined speed indicative of the content settling about the cutter assembly. The other thing that's completely missing when if you interpret that as a as part of the limitation is that it doesn't say what what point have the contents settled. Contents have never settled under this claim because there's never a point at which the speed is zero. The claim specifically says it's the speed. The settling speed is above zero. If if they literally interpret that particular limitation the way that they're urging, you would have to turn the motor completely off. It would go to zero and then everything settles about the cutter assembly. So that that language is simply describing the what the steps above are are are are describing. It's just a it's a it's a description of the earlier claim limitation. What what's accomplished by that is like a whereby clause. With respect to the failure of proof, we did not think that something as common sense as turning on and off a blender and then turning it on and off again needed extrinsic evidence to explain to the board. Their expert is not bringing in extrinsic evidence to provide some insight into the technology. The expert is trying to simply put his own spin on the intrinsic evidence. He's providing his own interpretation of intrinsic evidence, which the board is fully capable and this court is fully capable of looking at it on its own and applying the principles of Patent Law to the intrinsic evidence. But your expert also inaccurately described Wolf, right? By saying that only disclosed stopping. That's correct. Instead of reducing the speed. That's correct. The diagram clearly indicates that it's ramping up, ramping down. So it describes that describes that process. And there's never a point at which it comes to a complete stop. It says how many seconds you want to be at a particular speed. It doesn't say that that they can literally complain at a metaphysical level that it doesn't say that you must operate for those five seconds, those 20 seconds. Therefore, maybe it could have gone to zero during that time. That's pure implying something into Wolf that simply does not exist. Figure 25 clearly discloses everything there. And this whole concept of the settling speed, whether the board provided a definition, whether they excluded our definition implicitly, still did not provide me with a definition that I could appeal. I had a right after placing that issue before the board front and center to have a claim construction on that term that I could then examine and determine whether it was appealable and on what basis I would appeal that claim, claim construction. That was their obligation. The case was clear. And without regardless, the Whirlpool cannot simply imply some interpretation based upon the result. We are entitled to that interpretation. Thank you.